Murl P. Clark v. Commissioner.
Clark v. Commissioner
Docket No. 52985.
United States Tax Court
T.C. Memo 1959-97; 1959 Tax Ct. Memo LEXIS 150; 18 T.C.M. (CCH) 436; T.C.M. (RIA) 59097; May 18, 1959
William J. Duiker, Esq., Southern Building, Washington, D.C., for the petitioner. Stephen P. Cadden, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies as follows: Additions to tax under
Sec.
Sec.
Year
Deficiency
293(b)
294(d)
1947
$ 2,140.00
$1,070.00
1948
7,019.22
3,509.61
1949
679.53
339.76
1950
13,708.32
6,854.16
$2,246.92
In T.C. Memo. 1956-176, filed July 30, 1956, we sustained the deficiencies in tax, the additions for 1950 under section 294(d) for failure to *151 file a timely declaration of estimated tax and for substantial underestimate, and sustained the addition to tax under section 293(b) for fraud as to the year 1947, only. The Court of Appeals for the Third Circuit affirmed on certain points and reversed on others, remanding the proceeding with directions, 253 Fed. (2d) 745 (1958). The addition to tax for 1947 for fraud was rejected by the Court of Appeals. The issues involved upon the remand are: (1) A redetermination of the cash on hand at the end of each year represented by bank balances, giving effect to checks outstanding at that time which were issued for purposes other than the purchase of cattle. (2) An estimation of the amount of deductible items involved in cash withdrawals and unidentified checks giving effect to the petitioner's explanations. (3) Whether the collection of the tax for 1947 is barred by limitations. (4) The petitioner also claims a carryback loss from 1949. Findings of Fact The findings of fact previously made are found herein with the following additions and revisions. The checking account of the petitioner had the following amounts of outstanding checks at the close of the *152 years shown: Year
Amount
1946
$ 1,529.43
1947
2,535.88
1948
1,183.09
1949
9,394.62
1950
16,994.63 Of these one check for $713 outstanding on December 31, 1947, was for purchase of cattle. The other outstanding checks were issued for the purchase of potatoes, or payment for labor, feed, supplies, truck expenses, repairs, hauling and for drawing account. The net worth statement in the prior findings of fact included as additions to net worth items listed as cash drawings and checks. Some part of these amounts represented payments for labor supplies, incidental business purchases and cashing of checks for farmers and business associates. The following table shows the amounts listed as cash drawings and checks during each year, and the amounts of the deductible items and the nondeductible living expenses in each of such amounts: Cash With-
Nondeductible
drawals and
Amounts
Living
Year
Checks
Deductible
Expenses
1947
$ 3,660.32
$1,500
$2,160.32
1948
10,016.05
7,200
2,816.05
1949
6,059.51
2,700
3,359.51
1950
5,709.16
1,500
4,209.16
The revised net worth statement shows the following items at the end of 1946 *153 and of each of the taxable years. ASSETS
1946
1947
1948
1949
1950
Miscellaneous [1]
$50,937.80
$53,937.80
$53,937.80
$ 56,078.30
$ 62,059.30
Bank balance [2]
796.60
- 679.14 d
5,697.63
1,452.77
- 918.29 d
Livestock inventory
12,143.72
12,317.05
18,972.05
6,450.00
12,592.90
Trucks and autos
2,486.00 [1]
4,649.46 [1]
18,613.73
32,420.67 [1]
Farm equipment
2,000.00
2,000.00
2,000.00
2,000.00
2,000.00
Warehouse
23,653.92
30,687.80
Warehouse equipment
1,229.75
4,576.32
Total
$65,878.12
$70,061.71
$85,256.94
$109,478.47
$143,418.70
Reserve for depreciation
9,790.00
10,496.72
11,640.57
14,464.77
20,689.71
Net assets
$56,088.12
$59,564.99
$73,616.37
$ 95,013.70
$122,728.99
LIABILITIES
Miscellaneous [1]
None
None
None
$ 27,000.00
$ 37,000.00
Net worth
$56,088.12
$59,564.99
$73,616.37
68,013.70
85,728.99
Increase net worth
3,476.87
14,051.38
- 3,602.67 [4]
17,715.29
Drawings - personal: Miscellaneous purchases [1]
3,717.05
2,800.00
5,558.34
Cash drawings and checks [3]
2,160.32
2,816.05
3,359.21
4,209.16
Auto
750.00
Payment on lot
190.00
Gross income
$ 9,354.24
$19,667.43
$ - 243.46 [4]
$ 28,422.79
Standard deduction
500.00
1,000.00
1,000.00
Taxable income
$ 8,854.24
$18,667.43
None
$ 27,422.79
*154 The petitioner's return for 1947 reported gross profit from farming of $35,496.87. He did not omit from this return an amount properly includible therein in excess of 25 per cent of the gross income stated in such return. Opinion At the end of 1950 the petitioner had a bank balance of $16,076.34 and had issued checks which were outstanding in the amount of $16,994.63. The respondent included the entire bank balance in computing the petitioner's net worth, without any deduction for outstanding checks. We sustained this computation. The Court of Appeals commented: "The Tax Court in its opinion did not allow the amounts of the checks outstanding to reduce the bank balance at year's end because it found that all of them except insignificant amounts were for the acquisition of assets which it assumed were still on hand at the end of the tax year. Hence the change in net worth would not be affected by an accounting formality crediting one asset and debiting another, leaving the total unchanged. This reasoning is acceptable as *155 to the checks representing purchases of livestock for reasons to be later set out, but it has no support in the evidence with reference to potatoes and feed. The feed may already have been consumed, the potatoes sold and payment received, in which case petitioner's increase in net worth and consequent tax liability would be overstated. "What petitioner's eventual tax liability will be is for the Tax Court to say after a redetermination of the figure for 'Cash on hand' represented by bank balances at the end of each year. The checks outstanding at the end of the years 1946 through 1950 will be given effect in the year they were delivered in such a redetermination." The respondent now proposes to allow $1,805.65 of the outstanding checks as an allowable business expense in 1950, these amounts relating to labor, drawing account, feed, supplies, truck expenses, repairs and hauling. The balance of $15,188.98 representing purchases of potatoes between December 14, and December 29, 1950, respondent proposes to disallow as representing an inventory of potatoes unsold at the end of 1950 not included in the net worth statement. The further evidence introduced following the remand shows *156 that the petitioner's storage facilities were limited and that he could not have had a substantial inventory of potatoes at any time. None of these outstanding checks were for livestock and the opinion of the Court of Appeals is clear that the full amount of the checks outstanding at the end of 1950 should be deducted in computing the net worth at that time, resulting in a bank overdraft. Likewise the outstanding checks at the end of the earlier years should be deducted in full in determining net worth as of such dates, except for 1947, when one check for $713 for cattle was outstanding at the end of the year and the outstanding checks to be deducted should be reduced by this amount. The next issue relates to cash drawings and checks which the respondent treated as paid out for nondeductible living costs. The petitioner contends that the estimate of living costs made by the respondent and sustained by us for lack of contrary proof is too high. The Court of Appeals agreed and remanded with directions to make some estimation of the deductible items involved in such amounts, pointing out that the petitioner's habits were not extravagant, and that he and his family raised practically *157 all their own food. The following shows the amounts originally determined and the modified amounts now suggested by the respondent as representing nondeductible living expenses: Deter-
Now
Year
mined
suggested
1947
$ 3,660.32
$3,500
1948
10,016.05
5,000
1949
6,059.21
5,000
1950
5,709.16
5,000
The petitioner contends that upon the evidence anything substantially in excess of $1,800 per year would be arbitrary for living expenses. As we see it, the problem is approachable either with regard to the cost of living of petitioner and his family, which the Court of Appeals considered as minimal, or with regard to the amounts to be considered deductible from cash withdrawals and checks. The petitioner contends that some of these amounts were for farm labor, supplies, business purchases and checks cashed for farmers and business associates. The respondent points out that the petitioner operated a Cadillac car and purchased a Chrysler for his son, costs of living were increasing and cost of education of three children must have been increasing. Purchase of an electric organ in 1950 would indicate an improving and more costly standard of living. Considering *158 all the facts and all available evidence we have determined that the item of cash withdrawals and unidentified checks should be reduced to the figures stated in our revised findings of fact. The petitioner contends that assessment of any deficiency for 1947 is barred by the statute of limitations. Clark had executed a consent extending the period for such assessment but only with respect to the five-year period provided by section 275(c), [1] Internal Revenue Code of 1939, if such section is applicable under the facts. Clark reported a gross profit from farming of $35,496.87, claimed expenses of $32,756.24 and depreciation amounting to $2,543, leaving a net farm profit of $197.63, and no tax due. The gross income reported included $10,593.68 from sale of tobacco. It was alleged that he received $24,500 for the tobacco crop sold in that year. The Court of Appeals indicated that if the gross amount was received in part on account for his tenant farmers he was not obliged to report the full amount as his own income. There is no indication otherwise that any substantial amount was omitted from disclosure in the return for 1947. The recomputation pursuant to the mandate does not show a *159 sufficient gross income to bring section 275(c) into effect. It follows that assessment of any deficiency for 1947 is barred by the statute of limitations upon assessment. Since the recomputation shows a loss from farming operations for 1949 the petitioner is entitled to a net operating loss carryback pursuant to section 122, Internal Revenue Code of 1939. This is a Rule 50 adjustment. Decision will be entered under Rule 50. Footnotes
1. Petitioner concedes as correct. ↩
2. Balances less outstanding checks deductible. ↩
d. Overdraft. ↩
4. Net loss.↩
3. Reduced by deductible items. ↩
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩